IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY BERRY, )
)
              Plaintiff, )
)
v. )   Case No. 08-2439-JPO
)
MISSION GROUP KANSAS, INC., )
doing business as )
Wright Business School, )
)
              Defendant. )

**MEMORANDUM AND ORDER**

The plaintiff, Kimberly Berry, alleges that the defendant, Mission Group Kansas, Inc., d/b/a Wright Business School ("WBS"), retaliated against her in violation of Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq., after she reported incidents of sexual harassment against female students by a male instructor. This case is now before the court[1] on WBS's motion for summary judgment (**doc. 74**). The instant motion has been fully briefed (*see* docs. 75, 78, and 81).[2] For the reasons discussed below, WBS's motion

---

[1] On November 26, 2008, by consent of both parties, this case was reassigned for disposition from Hon. Carlos Murguia, U.S. District Judge, to the undersigned U.S. Magistrate Judge, James P. O'Hara. *See* doc. 12.

[2] Plaintiff's responsive brief and WBS's reply brief both were filed late. For future reference, the parties and counsel are respectfully reminded that D. Kan. Rule 6.1(d)(2) was amended, effective December 1, 2009, changing the time for filing responses and replies for dispositive motions to 21 days and 14 days, respectively.

for summary judgment is denied.[3]

I. Facts[4]

WBS is a post-secondary institution offering classes on a variety of subjects, including courses that train students to become surgical technologists. Berry was hired as an at-will employee by WBS in February 2006 to serve as the externship coordinator for the surgical-technologist program. Berry served as the externship coordinator until WBS terminated her employment on June 14, 2007.

In March 2007, Ray Gonzalez was hired as a surgical-technologist instructor at WBS. Shortly after Gonzalez was hired, students began complaining that he was acting inappropriately. Throughout the course of May 2007, there were allegations that Gonzalez made sexually suggestive comments to and about female students and women in general, asked out at least one student, told sexually explicit jokes and stories to groups of students, and generally paid more attention to female students. At least one student reported being so

---

[3]WBS also has a pending motion for sanctions for violations of the Rules of Professional Conduct by plaintiff's counsel (doc. 80), which requests in part that the court strike the declaration of Gena Renee Miller attached to Berry's response to the summary-judgment motion. While the motion for sanctions is not yet ripe for decision (plaintiff's response isn't due until March 18, 2010), the court notes that in reaching the decision to deny WBS's summary-judgment motion, it did not rely on Miller's declaration. Further decision on the motion for sanctions (i.e., with regard to whether plaintiff should be precluded from using Miller as a trial witness) will be made when that motion is fully briefed.

[4]The court construes the facts in the light most favorable to Berry as the nonmoving party pursuant to Fed. R. Civ. P. 56. Immaterial facts and those not properly supported by the record are omitted. When necessary, additional facts are included in the analysis section of this memorandum and order.

uncomfortable around Gonzalez that WBS permitted her to miss Gonzalez's weekly externship-review class.

On May 11, 2007, after a student complained to Berry about Gonzalez's behavior, Berry relayed this information to her supervisor, David Parmenter, the Corporate Director of Education. Parmenter informed his supervisor, David Toledo, the School Director, who met with Berry to discuss the complaints. Toledo told Berry not to involve James Miller, who was the chairman of WBS.

Parmenter was informed about another incident involving Gonzalez on May 16, 2007, and he relayed the information to Toldeo and John Mucci, who was the president of WBS and also its "Ethics Director." Berry again spoke with Parmenter about Gonzalez and followed-up with an email to Parmenter and Mucci, which stated that she was concerned about the situation and that Gonzalez's "grossly inappropriate talk continues almost daily."[5]

Berry continued following up with Parmenter regarding the situation. According to Berry, between May 11, 2007 and May 31, 2007, she inquired in excess of 10 times about how WBS planned to resolve the issues with Gonzalez. Parmenter and Toledo became "obviously irritated" with Berry's continued inquiries and began responding in an "aggressive" and "nasty" manner.[6] At one point, Parmenter told Berry that WBS could not fire Gonzalez until a replacement was hired, a situation Berry told Parmenter was

---

[5]Ex. E to doc. 75.

[6]Ex. A to doc. 78 at 55-56.

"unacceptable."[7] Berry believed that WBS was not doing anything to investigate Gonzalez's behavior since Gonzalez continued to harass students after Berry reported him. On May 31, 2007, an email was sent to Miller from Sara Roe, another WBS employee in the surgical-technologist program, which stated that she believed WBS management was doing nothing to resolve the situation with Gonzalez. Miller responded, stating that Mucci was conducting an investigation and would resolve the situation soon.

Mucci began investigating Gonzalez's conduct in late May. Based on that investigation, Mucci concluded that there was "overwhelmingly convincing" evidence that Gonzalez had behaved inappropriately.[8] WBS fired Gonzalez for sexually harassing students on May 31, 2007, 20 days after WBS management was notified about Gonzalez's sexual harassment.

On June 4, 2007, Toledo called Berry and Roe into his office to discuss the email sent to Miller. Toledo was upset and angry that Miller had been involved. Berry felt that she was held at least partially responsible for the email even though she didn't send it because it came from Berry's department. Berry was fired on June 14, 2007.

II. Summary-Judgment Standard

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact," and it is "entitled to judgment as a matter of law."[9]

---

[7] Ex. A to doc. 78 at 52.

[8] Ex. C to doc. 75 at 6.

[9] Fed. R. Civ. P. 56(c).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[10] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[11] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point to a lack of evidence for the other party on an essential element of that party's claim.[14]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[15] The nonmoving party may not simply rest upon the pleadings.[16] Rather, the nonmoving party must "set forth

---

[10]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11]*Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[12]*Id.*

[13]*Id.* at 670–71.

[14]*Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[15]*Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

[16]*Anderson*, 477 U.S. at 256.

specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[17] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[18]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[19]

### III. Analysis

The Supreme Court has recognized that Title IX encompasses claims of retaliation brought by individuals who speak out against sex discrimination.[20] Such retaliation claims are governed using analogous Title VII law.[21] A prima facie case of retaliation under Title IX requires a showing that (1) the plaintiff engaged in opposition to discrimination, (2) that a reasonable person would have found the action taken by the defendant to be materially adverse, and (3) that there is a causal connection between the opposition to discrimination

---

[17]*Adler*, 144 F.3d at 671.

[18]*Id.*

[19]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[20]*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) ("[W]e hold that Title IX's private right of action encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex.").

[21]*C.T. v. Liberal School Dist.*, 562 F. Supp. 2d 1324, 1336 (D. Kan. 2008).

and the complained-of, materially adverse action.[22] With regard to the first element, a plaintiff does not have to demonstrate that the conduct opposed was in fact a violation of Title IX. It suffices that the plaintiff held a reasonable, good-faith belief that the conduct opposed was a violation of the law.[23]

WBS's only argument is that summary judgment is appropriate because, based on the undisputed facts, Berry cannot establish the first element of a prima facie case of retaliation.[24] It is undisputed that Berry must prove that she reasonably and in good faith believed she was opposing discrimination under Title IX. The issue here is *whose* conduct Berry must be able to prove she opposed. WBS claims that no reasonable juror could conclude that Berry engaged in protected opposition to discrimination because the undisputed facts demonstrate that Berry could not have had an objectively reasonable belief that WBS was deliberately indifferent to sexual harassment that it had actual knowledge of, and which was severe and pervasive enough to systemically deprive WBS students of

---

[22]*Id.*; *see also Jackson*, 544 U.S. at 184 ("To prevail on the merits, Jackson will have to prove that the Board retaliated against him *because* he complained of sex discrimination."); *Dawn L. v. Greater Johnstown School Dist.*, 586 F. Supp. 2d 332, 374 (W.D. Pa. 2008) (noting the prima facie elements of a Title IX retaliation claim); *AB ex rel. CD v. Rhinebeck Central School Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) (same).

[23]*Atkinson v. Lafayette College*, 653 F. Supp. 2d 581, 595 (E.D. Pa. 2009) ("The employee's belief that the activity he opposes is unlawful must be objectively reasonable and held in good faith, and the employee's 'opposition' to the unlawful discrimination must not be equivocal."); *Dawn L.*, 586 F. Supp. 2d at 374 ("Plaintiffs 'need not prove the merits of the underlying discrimination complaint'; they need only show a 'good faith, reasonable belief that a violation existed.' *Moore v. City of Phila.*, 461 F.3d 331, 344 (3d Cir. 2006).").

[24]WBS does not address the other two essential elements of a retaliation claim, i.e., a materially adverse employment action and causation.

educational opportunities.

The deliberate-indifference standard is based on the premise that a recipient of federal funding can only be held liable under Title IX for its own misconduct. Thus, a funding recipient will only be held liable under Title IX for acts of sexual harassment by a teacher or student if the plaintiff proves that the recipient remained deliberately indifferent to acts of harassment of which it had actual knowledge, the harassment was reported to a person with authority to take corrective action, and the harassment was so severe, pervasive, and offensive that it deprived the plaintiff of access to opportunities or benefits provided by the school.[25]

But, as WBS acknowledges, sexual harassment is a form of discrimination actionable under Title IX.[26] Therefore, it follows that Berry could satisfy the first element of her case by pointing to facts that show she engaged in protected opposition to acts of sexual harassment, or more specifically, acts she reasonably and in good faith believed amounted to sexual harassment. And it has been stipulated in this case that Gonzalez was fired for sexually harassing students—acts that Berry clearly opposed when she reported him to her supervisors.

In a footnote, WBS argues that Berry must show that she had a reasonable belief "that ***WBS*** was engaged in conduct of its own that violated Title IX, not that the harasser, employee Ray Gonzalez, was engaged in conduct that violated Title IX. WBS is not

---

[25]*Escue v. Northern OK College*, 450 F.3d 1146, 1152 (10th Cir. 2006).

[26]*Id.*; doc. 75 at 24.

vicariously liable for the actions of Gonzalez in this context. Under Title IX, WBS is liable 'only for its own misconduct.'"[27] As noted above, WBS is correct on this last point.[28]

However, the allegation in this case is that WBS retaliated against Berry. Since "retaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of the statute,'"[29] the basis of Berry's claim is that WBS's act of retaliating against her subjected her to discrimination. By allowing Berry to show that she opposed conduct by Gonzalez that violated Title IX as part of her prima facie case of retaliation, WBS would not be facing liability for Gonzalez's actions. WBS is only facing liability for the actions *it* took as a result of Berry reporting Gonzalez's actions. Certainly, if WBS remained deliberately indifferent to Gonzalez's actions, it could be liable for that indifference. But if WBS fired Berry because she reported Gonzalez, it can also be liable for that retaliation, which is the issue presented here.

To allow the result WBS suggests—to require that an employee show that she opposed deliberate indifference to sustain a retaliation claim—would effectively allow an institution to retaliate against any employee who passes on to the institution's administration a claim of sexual harassment made by a student so long as the administration acted

---

[27]Doc. 75 at 26, n. 2.

[28]*Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999) ("We agree with respondents that a recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The recipient itself must 'exclud[e] [persons] from participation in, . . . den[y] [persons] the benefits of, or . . . subjec[t] [persons] to discrimination under' its 'program[s] or activit[ies]' in order to be liable under Title IX.").

[29]*Jackson*, 544 U.S. at 183.

appropriately in remedying the underlying sexual-harassment claim. In other words, WBS's position would allow an institution to "shoot the messenger" as long as it took appropriate action on the message itself. The problems with such a situation should be obvious. First, it would be contrary to the Supreme Court's holding that retaliation is itself actionable discrimination under Title IX. Second, if institutions could insulate themselves from retaliation claims by appropriately and effectively remedying the underlying harassment, i.e., by not being deliberately indifferent, employees would understandably be reluctant to step forward and report incidents of harassment in the first place because they would be left without recourse if they were fired for speaking up.[30] Thus, more claims of harassment would go unreported and unremedied, which would run counter to the purpose of Title IX.[31]

---

[30] *See Jackson*, 544 U.S. at 173–74, 180–81. Presumably, a plaintiff could have a claim of retaliation based on opposition to a school's deliberate indifference, since such deliberate indifference is an unlawful activity under Title IX. For example, if an employee was aware that serious complaints of sexual harassment had been made to appropriate school authorities, who nonetheless continued to ignore the issue, that employee could have a reasonable belief that she was opposing deliberate indifference if she reported the inaction to higher authorities. If she was fired as a result of this, she would have a claim of retaliation based on her reasonable, good-faith belief that she was opposing activity made unlawful by Title IX, i.e., deliberate indifference. In that situation, the analysis set forth by WBS would be relevant. Certainly, there are facts in this case that could lead us down that path. But that's not the theory of recovery Berry is pursuing, and thus whether there is adequate factual support for that theory need not be addressed. The pretrial order in this case specifically states that "[p]laintiff asserts she is entitled to recover upon the theory that WBS retaliated against plaintiff by terminating her employment *because of her complaints of sexual harassment by Gonzalez*, and her participation in its internal investigation in violation of Title IX." Doc. 71 at 6 (emphasis added).

[31] *See Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286 (1998) ("Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'" (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704

Berry maintains that she was fired "because she opposed sexual harassment by Ray Gonzalez, an instructor at WBS, in violation of Title IX."[32] Here, a jury could conclude that Berry was opposing conduct by Gonzalez that she reasonably and in good faith believed amounted to sexual harassment. It is undisputed that Gonzalez asked female students out, made sexually suggestive comments to students, told sexual jokes to groups of students, and even commented on the physical anatomy of some female students. Indeed, the parties have stipulated that Gonzalez was fired for sexually harassing students.[33] Further, protected opposition can include making complaints about sexual harassment to the funding recipient.[34] There is evidence that Berry reported Gonzalez to her supervisors at WBS and continued to follow up on the matter throughout the course of the investigation. Thus, a jury could conclude that Berry engaged in protected opposition to discrimination, i.e., that she reported to her supervisors that Gonzalez was harassing students.

## IV. Conclusion and Order

For the reasons indicated above, WBS's motion for summary judgment is denied. Because Berry's claim has survived summary judgment, a status conference will be held in Courtroom 236 on **March 23, 2010, at 1:30 p.m.**, to discuss and establish a special (i.e., No.

---

(1979)).

[32]Doc. 71 at 3.

[33]Doc. 71 at 2.

[34]*Tingley-Kelley v. Trustees of Univ. of Pennsylvania*, __ F. Supp. 2d __, No. 08-750, 2010 WL 53486, at *13 (E.D. Pa. Jan. 6, 2010); *Dawn L.*, 586 F Supp. 2d at 374.

1) trial setting. The court also intends to hear oral argument on WBS's above-referenced motion for sanctions.[35]

IT IS SO ORDERED.

Dated March 16, 2010, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[35]As earlier indicated, Berry's responsive brief isn't due until March 18, 2010. WBS's deadline for filing any reply brief (which of course is optional under the court's rules), is expedited to March 22, 2010, at 3:00 p.m.