IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY BERRY, )
)
        Plaintiff, )
)
v. )   Case No. 08-2439-JPO
)
MISSION GROUP KANSAS, INC., )
d/b/a Wright Business School, )
)
        Defendant. )

**MEMORANDUM AND ORDER**

This is a Title IX retaliation case. The plaintiff, Kimberly Berry, alleges that the defendant, Mission Group Kansas, Inc., d/b/a Wright Business School ("WBS"), retaliated against her in violation of Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq., after she reported incidents of sexual harassment against female students by a male instructor. Following a five-day trial, the jury returned a verdict in favor of WBS, concluding that WBS did not retaliate against Berry in violation of Title IX. Judgment has been entered accordingly (*see* doc. 130).

The case is now before the court on Berry's motion for a new trial pursuant to Fed. R. Civ. P. 59(a) (**doc. 131**). Berry argues that the court improperly excluded evidence about the existence of a consumer-related investigation of WBS by the Johnson County, Kansas District Attorney ("DA's investigation"), which was ongoing around the time Berry was fired. For the reasons discussed below, Berry's motion for a new trial is denied.

In considering a motion for a new trial, the court may grant a new trial on all or some of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[1] Motions for new trial are committed to the sound discretion of the trial court.[2] They are generally regarded with disfavor and should only be granted with great caution.[3] A "party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence."[4] While the court has the discretion to grant a new trial if a verdict appears to be against the weight of the evidence,[5] as a general rule the court must be mindful not to usurp the role of the jury and must exercise its discretionary power only in exceptional circumstances.[6] "A new trial is not warranted simply because the court would have reached a different verdict."[7] A party seeking to set aside a jury verdict "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the

---

[1] Fed. R. Civ. P. 59(a)(1)(A).

[2] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[3] *Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[4] *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir. 1983).

[5] *Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir. 1995).

[6] *Rivera v. Rivera*, 262 F. Supp. 2d 1217, 1230–31 (D. Kan. 2003).

[7] *Hillman v. U.S. Postal Serv.*, 169 F. Supp. 2d 1218, 1222 (D. Kan. 2001) (quoting *Boyce v. Bd. of County Comm'rs*, 857 F. Supp. 794, 797 (D. Kan. 1994)).

weight of the evidence."[8]

Berry cites Fed. R. Evid. 403 and argues that evidence of the DA's investigation would not have been unfairly prejudicial to WBS. Rule 403 states that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In the context of a motion for new trial, then, Berry must establish that excluding evidence of the DA's investigation was improper under Rule 403, and that this error was prejudicial enough to Berry to warrant a new trial.[9]

In her motion, Berry argues that it was wrong to exclude evidence of the existence of the DA's investigation of WBS for consumer fraud.[10] Specifically, Berry claims that evidence of the DA's investigation was necessary to inform the jury why Berry was communicating with former-WBS-employee Larry LeBeouf—because of the investigation and not to support LeBeouf's supposed attempts to harm WBS. Berry claims this evidence was necessary to show that it was the DA who posed the real threat to WBS—not LeBeouf, and that this would have contradicted John Mucci's testimony that he believed LeBeouf was

---

[8]*Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (internal quotations and citation omitted).

[9]Berry has not argued that the verdict was not based on substantial evidence.

[10]Berry's motion and reply make reference to some details of the investigation. However, it is only evidence regarding the existence of the investigation that is at issue. The court notes that Berry conceded in briefing pretrial motions in limine that the contents and results of the investigation are irrelevant to this case. *See* doc. 115 at 8.

poised to "take down" the school. Berry also claims that evidence of the DA's investigation would have allowed for the inference that Berry was preserving documents for the investigation rather than taking them for a nefarious purpose, and also dispelled the notion that Berry was the cause of student complaints. Finally, Berry sought to introduce the DA's investigation to allow for the "reasonable inference" that it was the investigation that caused another former WBS employee, Brandon Wilson, to resign rather than Berry's passing on of Wilson's phone number to LeBeouf.

But even assuming all this is true, and even assuming that the jury would have made all the required inferences, it's unclear as to what probative value this evidence would have added to the trial. To prove her case of Title IX retaliation, Berry was required to establish in part a causal connection between her protected conduct under Title IX and WBS's termination of her employment.[11] This meant that, but for Berry's protected conduct in reporting sexual harassment and participating in WBS's internal investigation into that harassment, WBS would not have fired her.[12] The jury was instructed that if it found that WBS honestly believed there were other reasons to fire Berry and acted accordingly, it is irrelevant if those other reasons were wise, fair, or correct.[13]

Evidence that there was a DA investigation ongoing or that Berry was speaking to

---

[11]*See* Jury Instruction No. 10, doc. 122 at 13.

[12]Jury Instruction No. 12, doc. 122 at 15.

[13]Jury Instruction No. 15, doc. 122 at 18.

LeBeouf about that investigation does not establish the requisite causal connection. Even if the jury was informed that Berry was only speaking to LeBeouf because of the DA's investigation and even if the jurors were convinced that it was wrong to fire her for cooperating with the DA's investigation, that still would not have been sufficient grounds to enter a verdict for Berry if the jury was not convinced that she was fired for complaining about sexual harassment. The same is true for Berry's claim that evidence of the DA's investigation would have discredited WBS's claims that Berry was wrongfully handling school records or that she was the source of student complaints. Such evidence might indicate that WBS's decision to fire Berry was not wise, fair, or correct, but it neither proves nor disproves that WBS fired Berry because she engaged in protected conduct under Title IX.

Further, it is not even clear that evidence of the DA's investigation would have discredited WBS's reasons for terminating Berry's employment. WBS claimed that Berry was fired for providing confidential information to LeBeouf and another former employee, Cathy Adkins, or otherwise conspiring with them to harm WBS. Berry makes much of the fact that it was the DA who posed the real threat to WBS, not LeBeouf individually. But this is a distinction without a meaningful difference in the context of this case. WBS might have fired Berry because it believed she was working with LeBeouf personally to "take down" WBS or because she was working with him in cooperation with the DA's investigation. Neither necessarily contradicts WBS's defense that she was fired for passing on confidential

information. And again, regardless of which was true, as long as WBS didn't fire Berry for complaining about sexual harassment—which this evidence doesn't prove or disprove—retaliation in violation of Title IX has not been proven. Perhaps the existence of the DA's investigation would have painted a fuller picture of what was transpiring at WBS. But the addition of that evidence would be superfluous to what was the crucial issue in this case—causation.

When the very weak probative value of this evidence is weighed against the rather significant danger of unfair prejudice and the risk that it might confuse or mislead the jury, it is difficult to conclude that there was any error in excluding this evidence, let alone any error that was prejudicial enough to warrant a new trial. Evidence that WBS was being investigated for consumer fraud would have potentially been very prejudicial to WBS by putting evidence before the jury that WBS was at least suspected of wrongdoing for conduct having nothing to do with the issues in this case. While in some contexts this evidence could be considered prejudicial but not unfairly so, here, given the shallow probative value of the DA's investigation, it is unlikely that this evidence would have been anything but unfairly prejudicial to WBS in this case.

Further, there is also significant risk that evidence of the DA's investigation could have confused or misled the jury. Berry's own motion for a new trial states that her participation in the DA's investigation "was part of the reason WBS fired her." But the issue in this case was whether Berry was terminated for reporting sexual harassment and

participating in the school's *internal investigation*, not whether she was fired for assisting the DA's office with their investigation. Allowing Berry to put on evidence of the DA's investigation would have unnecessarily muddied the waters and could have potentially led the jury to return a verdict for retaliation that had nothing to do with the Title IX context in which this case was tried.

Accordingly, the probative value of the DA's investigation was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Thus, the evidence was properly excluded under Rule 403. Having demonstrated no prejudicial trial error that would warrant a new trial, Berry's motion is denied.[14]

IT IS SO ORDERED.

Dated October 13, 2010, at Kansas City, Kansas.

s/ James P. O'Hara<br>
James P. O'Hara<br>
U.S. Magistrate Judge

---

[14] The court notes WBS's argument in its response that Berry failed to make an adequate offer of proof to preserve this matter for review. Fed. R. Evid. 103(a) provides that error may not be predicated on an evidentiary ruling excluding evidence unless a substantial right is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The court suggests that it was well aware of the substance of the evidence sought to be admitted given the context of the case and the briefings on the motions in limine. However, given the fact that this order concludes that there was no error in denying admission of this evidence, WBS's argument about Berry's offer of proof is moot.